[Cite as *State v. Taylor*, 2011-Ohio-2563.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

STATE OF OHIO                    :

    Plaintiff-Appellee           :     C.A. CASE NO. 23916

vs.                              :     T.C. CASE NO. 97CR1303

EDWARD D. TAYLOR                 :     (Criminal Appeal from
                                      Common Pleas Court)

    Defendant-Appellant          :

. . . . . . . . .

O P I N I O N

Rendered on the 27th day of May, 2011.

. . . . . . . . .

Mathias H. Heck, Jr., Pros. Attorney; Carley J. Ingram, Asst. Pros. Attorney, Atty. Reg. No.0020084, P.O. Box 972, Dayton, OH  45422
    Attorneys for Plaintiff-Appellee

Adrian King, Atty. Reg. No.0081882, 36 N. Detroit Street, Suite 104, Xenia, OH 45385
    Attorney for Defendant-Appellant

. . . . . . . . .

GRADY, P.J.:

{¶ 1} Defendant, Edward Taylor, appeals from a final judgment denying his motion for a new trial based upon a claim of newly discovered evidence.

{¶ 2} In February 1998, Defendant was found guilty following a jury trial of murder with a firearm specification.  The trial

court sentenced Defendant to prison terms totaling eighteen years to life. We affirmed Defendant's conviction and sentence on direct appeal. *State v. Taylor* (April 16, 1999), Montgomery App. No. 17142. In our Opinion we set forth the facts of the case as follows:

{¶ 3} "On May 9, 1997, Paul Metz was shot and killed in the rear bedroom of his apartment. Earlier that day, Metz had asked an ex-neighbor, Tyaunna Landers, to find buyers for some marijuana he was receiving that day. Landers brought defendant-appellant Edward Taylor and an unidentified man, referred to only as 'Joe,' to Metz's apartment to purchase the marijuana. When the three first arrived at the apartment, only Paul and his girlfriend, Jody Brown were present. The five smoked some marijuana and discussed the price of the marijuana. After approximately thirty to forty-five minutes, Taylor, Joe and Landers left.

{¶ 4} "Later, Merle Lunsford arrived at the apartment. He brought six pounds of marijuana with him, as well as a .38 caliber Smith & Wesson handgun, which he kept in his jacket pocket. Lunsford testified that he brought the gun with him upon Metz's request because Metz did not trust the buyers. Lunsford gave Metz five pounds of the marijuana, which Metz took into the back bedroom of the apartment; the other pound of marijuana was intended for another party. Shortly after Lunsford arrived, Landers, Taylor and Joe returned. Metz and Taylor went to a back bedroom, leaving

Landers, Joe, Lunsford and Brown in the living room.

{¶ 5} "Brown and Landers testified that they heard a gunshot in the rear bedroom, and then Joe began shooting at Lunsford. Lunsford was not sure whether he heard the shots in the bedroom before Joe started shooting. Lunsford testified that Joe shot him in the forehead, causing him to fall back over the couch. He testified that Joe then shot him several times in the leg. According to Lunsford, he then pulled out his gun and returned fire at Joe, getting off two shots. He testified that Taylor came out of the bedroom with a gun and aimed at Lunsford. He testified that Taylor pulled the trigger, but the gun did not fire. Lunsford further testified that he fired approximately three times at Taylor, wounding him in the head. Taylor fled the apartment through the bedroom window.

{¶ 6} "At some point, Brown, Landers and Joe fled the apartment. Lunsford testified that before leaving the apartment he picked up Joe's .25 caliber silver automatic, and then left the apartment as well. He further testified that once outside the apartment, he saw Landers, Joe and Taylor getting into their car; at that point he attempted to shoot at them with Joe's gun, but the gun was empty. According to Lunsford, he then threw Joe's gun into a mud puddle, where it was later recovered. Lunsford then went to a fire department where he was treated and transported

to a hospital. Lunsford testified that he disposed of his .38 caliber weapon and only turned it over to the authorities after he was assured of immunity for his testimony in the prosecution of Taylor.

{¶ 7} "Landers testified that after she fled the apartment, she helped Taylor into the Plymouth Breeze automobile they had arrived in. They drove away and picked up Joe somewhere on the street. Landers testified that they drove to Taylor's apartment where she and Taylor transferred into Taylor's car. Taylor and Landers then drove to Cincinnati so that Taylor could be treated at a hospital. Taylor and Landers told hospital staff and the Cincinnati Police that he had been shot when they stopped to ask for directions in Cincinnati. Taylor was subsequently arrested by the Dayton police.

{¶ 8} "Metz died as a result of four gunshot wounds. The coroner recovered only one bullet from his body; the bullet was from a .45 caliber weapon that was found in the bedroom with Metz. An atomic absorption test was performed on Metz's hands to test for gunpowder residue. Residue was found on his hands. An atomic absorption test performed on Lunsford's hands also indicated that he had gunpowder residue on his hands. No atomic absorption test was performed on Taylor's hands."

{¶ 9} On February 16, 2007, nine years after he was convicted

of murdering Paul Metz, Defendant filed a motion for a new trial based upon newly discovered evidence. Crim.R. 33(A)(6). In support of his motion, Defendant attached affidavits from Antonio Haney and Charles Martin, who, in identical language, claim that they overheard Merle Lunsford tell an unidentified person that he had falsely testified at Defendant's trial that Defendant went to Metz's apartment to rob Metz and Lunsford. Also, according to the affidavits, Lunsford stated that it was Metz, and not him, who shot Defendant.

{¶ 10} On January 8, 2008, Defendant supplemented his motion for a new trial with his own affidavit, wherein he states he shot Metz in self-defense after Metz shot him in the face. On February 14, 2008, the State filed its third memorandum contra Defendant's motion for a new trial. The State argued that the materials submitted by Defendant fail to demonstrate that he was unavoidably prevented from discovering his new evidence, and in any event the evidence presented at trial was overwhelming and the affidavits submitted by Defendant were insufficient to demonstrate a reasonable probability of a different result should a new trial be ordered. On April 8, 2008, Defendant supplemented his new trial motion with an affidavit from Joseph Postone, who claims he was present and saw Metz shoot Defendant in the face before Defendant pulled his gun and fired back.

{¶ 11} On February 12, 2010, the trial court summarily denied Defendant's motion for a new trial without a hearing. The court concluded that Defendant had not demonstrated by clear and convincing proof that he was unavoidably prevented from discovering the new evidence he now relies on. The court further concluded that the affidavits submitted by Defendant are not credible and are insufficient to justify a hearing.

{¶ 12} Defendant timely appealed to this court from the trial court's decision overruling his motion for a new trial

## ASSIGNMENT OF ERROR

"THE TRIAL COURT ERRED IN OVERRULING THE MOTION FOR LEAVE TO FILE MOTION FOR A NEW TRIAL WITHOUT HAVING A HEARING."

{¶ 13} The decision whether to grant a motion for a new trial lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54.

{¶ 14} "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248, 1252. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

{¶ 15} A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. v. River Place Community Redevelopment* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597.

{¶ 16} Pursuant to Crim.R. 33(A)(6), a new trial may be granted when new evidence material to the defense is discovered that the defendant could not with reasonable diligence have discovered and produced at trial. To prevail on a motion for new trial based upon newly discovered evidence, Defendant must show that the new evidence: (1) discloses a strong probability that the result of the trial would be different if a new trial were granted; (2) has been discovered since the trial; (3) is such as could not have been discovered before the trial through the exercise of due diligence; (4) is material to the issues; (5) is not merely cumulative to former evidence; and (6) does not merely impeach or contradict the former evidence. *State v. Petro* (1947), 148 Ohio St. 505; *State v. DeVaughns*, Montgomery App. No. 23720, 2011-Ohio-125.

{¶ 17} Motions for a new trial based upon newly discovered evidence must be filed within one hundred twenty days after the

verdict was rendered, unless it appears by clear and convincing proof that the movant was unavoidably prevented from discovering the new evidence, in which case the motion for new trial must be filed within seven days after an order of the court finding that Defendant was unavoidably prevented from discovering the new evidence within the one hundred twenty day period. Crim.R. 33(B).

{¶ 18} Defendant failed to obtain leave of court to pursue an untimely motion for a new trial, and further failed to demonstrate by clear and convincing proof that he was unavoidably prevented from discovering the new evidence on which he relies. Further, a review of Defendant's motion for a new trial reveals that it lacks merit, because the new evidence is not material to the defense. Material evidence is evidence which goes to the substantial matters in dispute or has a legitimate and effective influence or bearing on the decision in the case. Black's Law Dictionary (4th Ed., 1968), at p. 1128.

{¶ 19} Defendant's motion for a new trial is predicated on the proposition that Defendant had agreed to buy marijuana from Metz, and that Metz pulled a gun on Defendant in order to steal his money and shot Defendant in the head, after which Defendant shot Metz in self-defense. However, Defendant never claimed at trial that he acted in self-defense in shooting Metz. To the contrary, Defendant claimed that he never shot anyone. The "new

evidence," which consists of affidavit statements by Defendant and three others, if true, directly contradicts and defeats the defense Defendant pursued at trial. The new evidence therefore fails to satisfy the materiality requirement of Crim.R. 33(A)(6).

{¶ 20} Additionally, we note that the affidavits of Haney and Martin, which were offered in support of Defendant's theory that he shot Metz in self-defense, inaccurately report the facts. Both affidavits claim that Lunsford admitted falsely testifying that Defendant Taylor came to the apartment to rob Lunsford and Metz. Howeer, Lunsford never testified at trial that Defendant Taylor came to rob them. No abuse of discretion on the part of the trial court in denying Defendant's motion for a new trial has been demonstrated.

{¶ 21} With respect to Defendant's claim that he was unavoidably prevented from timely discovering this new evidence, we note that the guilty verdicts in this case were returned by the jury in February 1998. This motion for a new trial was filed on February 16, 2007, nine years after the guilty verdicts. Obviously Defendant's motion for a new trial is untimely, and he was therefore required to demonstrate by clear and convincing proof that he was unavoidably prevented from discovering the new evidence within one hundred and twenty days after the guilty verdicts were rendered.

{¶ 22} In concluding that Defendant failed to demonstrate that he was unavoidably prevented from discovering the new evidence, the trial court found that the affidavits submitted by Defendant were not credible. *State v. Calhoun* (1999), 86 Ohio St.3d 279. The court pointed out that Defendant became aware of Haney's statements that Lunsford had changed his testimony more than one year prior to filing his motion for a new trial. Martin's affidavit, which employs the exact same language as Haney's, was obtained ten months after Haney's affidavit. No showing has been made as to why it took ten months to obtain Martin's affidavit.

{¶ 23} Furthermore, the court noted that the affidavits fail to specify when and where the conversation with Lunsford took place, how affiants know Lunsford, affiants' relationship with Defendant and when and how Defendant became aware of the conversations between affiants and Lunsford. The trial court noted that several of the *Calhoun* factors affecting credibility apply in this case. For instance, this trial court presided over the trial, the wording of Haney's and Martin's affidavits are identical, and the new evidence set forth in the affidavits relies completely upon hearsay.

{¶ 24} We find no abuse of discretion in the trial court's denial of Defendant's motion for a new trial on the court's finding that Defendant failed to demonstrate by clear and convincing proof

that he was unavoidably prevented from discovering the new evidence, and on the court's further finding that the affidavits Defendant submitted from Haney and Martin were not credible. *State v. Lanier*, Clark App. No. 2009CA84, 2010-Ohio-2921, at ¶16.

{¶ 25} Defendant's assignment of error is overruled. The judgment of the trial court will be affirmed.

DONOVAN, J. And HALL, J., concur.

Copies mailed to:

Carley J. Ingram, Esq.
Adrian King, Esq.
Hon. Barbara P. Gorman