[Cite as *State v. Perkins*, 2011-Ohio-5070.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24397 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2008-CR-1411 |
| v. | : | |
| | : | |
| JESSE E. PERKINS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 30th day of September, 2011.

. . . . . . . . .

MATHIAS H. HECK, JR., by L. LYNN NOTHSTINE, Atty. Reg. #0061560, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorneys for Plaintiff-Appellee

JESSE E. PERKINS, Inmate #588-767, Lebanon Correctional Institution, Post Office Box 69, London, Ohio 43140
      Defendant-Appellant, *pro se*

. . . . . . . . .

CANNON, J., sitting by assignment.

{¶ 1} Jesse Perkins appeals the judgment entered by the Montgomery County Court of Common Pleas, denying his motion for new trial and his petition for postconviction relief.

For the following reasons, the trial court's judgment is affirmed.

{¶ 2}   In August 2008, after a jury trial, Perkins was convicted of three counts of felonious assault with a deadly weapon in violation of R.C. 2903.11(A)(2) and two counts of felonious assault resulting in serious physical harm in violation of R.C. 2903.11(A)(1).   He was subsequently sentenced to an eight-year prison term on each count, to be served concurrently for an aggregate prison term of eight years.   The charged offenses arose out of an altercation at Belmont Billiards.   The altercation resulted in two victims suffering severe head lacerations, with a third individual suffering head trauma.

{¶ 3}   Perkins filed a direct appeal from the trial court's sentencing judgment entry, challenging the sufficiency and weight of the evidence.   The decision of the Common Pleas Court was affirmed in *State v. Perkins*, Montgomery App. No. 23036, 2009-Ohio-6696.   A discretionary appeal to the Supreme Court of Ohio was not allowed.   *State v. Perkins*, 125 Ohio St.3d 1447, 2010-Ohio-2510.

{¶ 4}   On June 25, 2009, Perkins filed a petition for postconviction relief.   On June 29, 2009, Perkins filed a motion for leave to file motion for new trial and attached his motion for new trial.   In addition, he filed several other post-trial motions.   The state then filed a motion for summary judgment.   The trial court, in a single judgment entry, overruled the petition for postconviction relief, motion for leave to file motion for new trial, motion for expert assistance, motion for copies of telephone recordings, and motion to appoint counsel.

{¶ 5}   Perkins appeals the trial court's decision, raising two assignments of error. We will address his assigned errors out of numerical order.   Perkins' second assignment of error is:

**{¶ 6}** "The trial court erred by not granting an evidentiary hearing on his post conviction petition when the facts, claims, and allegations, and exhibits and evidence attached to the petition warranted a hearing because of the fact that if the facts alleged were true, then by using the court's power of subpoena the facts could be more fully developed on the record at a hearing."

**{¶ 7}** Initially, we will address the timeliness of Perkins' petition for postconviction relief. R.C. 2953.21 requires that a petition for postconviction relief "be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal." The state argues that Perkins' petition is untimely because a videotaped transcript was filed on November 19, 2008, more than 180 days before Perkins filed his petition. The state relies on this court's decision in *State v. Everette*, Montgomery App. No. 23585, 2010-Ohio-2832. However, while this appeal was pending, the *Everette* decision was reversed by the Supreme Court of Ohio. *State v. Everette*, 129 Ohio St.3d 317, 2011-Ohio-2856, at ¶1. The court held: "[f]or purposes of determining when the 180-day time period for filing a postconviction relief petition shall accrue, only the certified, written transcript constitutes a 'transcript' under App.R. 9 and R.C. 2953.21(A)(2) when both a videotape recording and the written form of the proceedings are available." Id. at syllabus. In this matter, the written transcript was filed on January 8, 2009. Since Perkins' petition for postconviction relief was filed within 180 days of the date the written transcript was filed, it is timely.

**{¶ 8}** Perkins argues that the postconviction petition should not have been denied without first having an evidentiary hearing. Perkins believes that he attached sufficient

evidence that could have reasonably changed the outcome of the trial and therefore the trial court should have granted a hearing. Specifically, Perkins relies heavily on the affidavit of Melinda Wells, one of his "investigators."

{¶ 9} Postconviction relief proceedings are not direct appeals of the criminal conviction; instead they function as a collateral, civil attack on the judgment. *State v. Calhoun*, 86 Ohio St.3d 279, 281, 1999-Ohio-102. Ohio's postconviction relief statute, R.C. 2953.21, provides, in part:

{¶ 10} "Any person who has been convicted of a criminal offense *** and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States *** may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief." R.C. 2953.21(A)(1)(a).

{¶ 11} "Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. The court reporter's transcript, if ordered and certified by the court, shall be taxed as court costs. If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with

respect to such dismissal."   R.C. 2953.21(C).

{¶ 12} In this case, the trial court entered summary judgment in favor of the state on Perkins' petition for postconviction relief.   In order for a motion for summary judgment to be granted, the moving party must demonstrate:

{¶ 13} "(1) [N]o genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made."   *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 1996-Ohio-389.   (Citation omitted.)

{¶ 14} Summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, *** show that there is no genuine issue as to any material fact ***."   Civ.R. 56(C).   Material facts are those that might affect the outcome of the suit under the governing law of the case.   *Turner v. Turner*, 67 Ohio St.3d 337, 340, 1993-Ohio-176, quoting *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248.   If the moving party meets this burden, the nonmoving party must then provide evidence illustrating a genuine issue of material fact, pursuant to Civ.R. 56(E).   *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107.   Summary judgment is appropriate pursuant to Civ.R. 56(E) if the nonmoving party does not meet this burden.

{¶ 15} The trial court is not required to conduct a hearing whenever a petition for postconviction relief is filed.   *State v. Cole* (1982), 2 Ohio St.3d 112, 113; *State v. Ramos*,

Geauga App. No. 2007-G-2794, 2008-Ohio-3738, at ¶28. Instead, before granting an evidentiary hearing, the trial court must determine whether there are substantive grounds for relief. *State v. Calhoun*, 86 Ohio St.3d at 282-283. "The pivotal concern is whether there are substantive grounds for relief which would warrant a hearing based upon the petition, the supporting affidavit and the files and records of this cause." *State v. Jackson* (1980), 64 Ohio St.2d 107, 110. However, affidavits which are conclusory or self-serving, without more, will not satisfy the petitioner's evidentiary burden. *State v. Pierce* (1998), 127 Ohio App.3d 578, 586.

{¶ 16} In reviewing a trial court's determination on a petition for postconviction relief, the reviewing court uses an abuse of discretion standard of review. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, at ¶45. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, Clark App. No. 09-CA-54, 2010-Ohio-1900, at ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11.

{¶ 17} Perkins raised seven individual claims for relief in his petition for postconviction relief. In his first claim for relief, Perkins asserts that he was "denied a fair trial guaranteed by the Ohio and Federal Constitutions, because he was under threat, duress and coercion during the trial."

{¶ 18} Perkins argues that he was not able to present materially exculpatory evidence at trial because he was "under threat of death by the real assailant" if he testified at the trial or told the police who committed the offenses. The alleged threats were all made prior to the criminal trial, with the exception of an alleged threat by Perkins' attorney's step-daughter.

Perkins further alleges that his attorney's step-daughter was dating the "real assailant."

{¶ 19} "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack or due process that was raised or could have been raised by the defendant at trial, which resulted in the judgment of conviction, or on an appeal from that judgment." *State v. Szefcyk*, 77 Ohio St.3d 93, 95, 1996-Ohio-337.

{¶ 20} Any claim for postconviction relief that was or could have been raised on direct appeal is barred from consideration by the doctrine of res judicata. *State v. Williams*, 157 Ohio App.3d 374, 2004-Ohio-2857, at ¶17, citing *State v. Perry* (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus.

{¶ 21} In this matter, Perkins could have raised the issue of the alleged threats to the court during his trial. In addition, since this information was known to him at the time of his trial, he could have raised this issue in his direct appeal to this court. However, since he failed to do so, he is barred from raising this issue at this time pursuant to the doctrine of res judicata.

{¶ 22} At trial, Perkins chose not to testify as to the identity of the individual he believes to be responsible for the crime. It was Perkins' freely-made choice not to testify. There was no state action that prevented him from testifying and identifying the individual he believes to be the perpetrator. State action is required for a deprivation of a constitutional right to occur. See, e.g., *State v. Roe* (1989), 41 Ohio St.3d 18, 23. Therefore in addition to being barred by the doctrine of res judicata, Perkins' claim fails because there was no state

action preventing Perkins from testifying.

{¶ 23} In his second claim for relief, Perkins alleges that he was denied his due process and equal protection rights due to two instances of juror misconduct. "[U]nder Crim.R. 33(A), juror misconduct justifies a new trial only if it materially affected an accused's substantial rights." *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, at ¶45. Moreover, the burden is on the party alleging juror misconduct to establish prejudice. Id. at ¶42, citing *Smith v. Phillips* (1982), 455 U.S. 209, 215-217.

{¶ 24} Perkins alleges two separate incidents of juror misconduct. In the first instance, one juror allegedly drank alcohol at lunch during the trial. Perkins relies on information collected by Melinda Wells. Wells, in her affidavit, claims to have spoken with an employee of Frank's Tavern, who allegedly served alcohol to a member of the jury in Perkins' case. However, Perkins did not obtain an affidavit from anyone who saw the juror consume alcohol.

{¶ 25} In assessing petitions for postconviction relief, the trial court may deem affidavit testimony to lack credibility. *State v. Calhoun*, 86 Ohio St.3d at 285. Factors that may be considered include, but are not limited to, whether the affidavits contain or rely on hearsay and whether the affidavits are from parties interested in petitioner's success. Id., citing *State v. Moore* (1994), 99 Ohio App.3d 748, 754-756. In this case, the trial court did not find Wells' affidavit to be persuasive. The trial court had sufficient evidence to reach that conclusion, as the affidavit relied on hearsay and Wells is an interested party.

{¶ 26} Finally, even if this allegation were true it cannot automatically be classified as juror misconduct. Perkins would have to show actual prejudice from the juror's actions,

which he has not done. *State v. Hipkins* (1982), 69 Ohio St.2d 80, 83. Presumably, had the juror consumed enough alcohol to become intoxicated, the trial court, the attorneys, court personnel, or other jurors would have noticed his or her condition.

{¶ 27} In the second instance of alleged juror misconduct, a juror allegedly fell asleep during the trial. To support his claim, Perkins submitted the affidavit of Sheree Prewitt along with his own affidavit adopting the entire statement of facts from his postconviction petition. In his affidavit, Perkins claims to have learned about the sleeping juror from Wells. If a juror would have been sleeping during the trial, it should have been noticed by the attorneys or the trial court, and raised at that time. The purpose of raising the issue during the trial itself is that the trial court has significant discretion in how it resolves an incident with a sleeping juror. *State v. Sanders*, 92 Ohio St.3d 245, 253, 2001-Ohio-189. (Citations omitted.) In addition, to demonstrate prejudice, Perkins needed to assert the exact testimony that the sleeping juror missed. See, e.g., *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, at ¶187. Finally, if Perkins had knowledge of the alleged juror misconduct during trial, he is precluded from raising this issue under the doctrine of res judicata, since he could have raised this issue in his direct appeal.

{¶ 28} Moreover, the issue of juror misconduct was raised at sentencing by Perkins' attorney. While Perkins' attorney did not specify the basis for the misconduct, he informed the court that, after investigating the matter, he determined it was not worth pursuing. Accordingly, this additional factor supports the proposition that Perkins' claims are barred by res judicata.

{¶ 29} In his third claim for relief, Perkins argues that he received ineffective

assistance of counsel because counsel did not file a motion for a new trial after hearing newly-discovered exculpatory evidence after the trial was over.

{¶ 30} In *State v. Bradley*, the Supreme Court of Ohio adopted the following test to determine if counsel's performance is ineffective: "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley* (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, adopting the test set forth in *Strickland v. Washington* (1984), 466 U.S. 668. Moreover, "'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *** If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, *** that course should be followed.'" Id. at 143, quoting *Strickland*, 466 U.S. at 697.

{¶ 31} In the case at hand, the trial court dealt with Perkins' ineffective assistance claim in detail. We agree with its conclusions that Perkins shows neither lack of competent counsel nor resulting prejudice. The trial court noted that the "newly discovered exculpatory evidence" was actually known by Perkins all along and that Perkins purposefully withheld this possible witness' name from counsel. In his petition for postconviction relief, Perkins states: "This evidence could not have been discovered at trial because the Defendant kept this Justin Higgins mans name hidden from his attorney [sic]." Perkins' trial counsel's representation was not deficient for failing to pursue a matter he did not know about. Moreover, since this information was known to Perkins and not previously raised, this issue is barred by res

judicata.   As such, it was proper for the trial court to enter summary judgment upon Perkins' ineffective assistance of counsel claim.

{¶ 32} In his fourth claim for relief, Perkins asserts that he was denied a fair trial and his due process rights under the Ohio and U.S. Constitutions were violated when a witness purposefully avoided his attorney's calls because she was scared to come into court.  The possible witness was allegedly scared to come into court because she did not want her probation officer to find out she was working in a bar.

{¶ 33} Perkins again relies on Wells' affidavit instead of obtaining an affidavit from the possible witness.  Wells' affidavit shows that Perkins' possible witness would have testified that Perkins did not commit the assaults for which he was convicted.  Perkins alleges that "the [Defendant] didn't have much of a defense, especially since the only evidence was people's testimony that the [Defendant] did it."  This statement is misleading.  As the trial court noted, multiple witnesses testified at trial that Perkins was innocent.

{¶ 34} Furthermore, Perkins claims that he would use the subpoena power of the court to compel the possible witness to testify at a postconviction relief hearing.  Perkins had this power during the jury trial and chose not to exercise it.  The testimony is also not newly discovered since his attorney was in contact with the possible witness prior to the trial.  As such, the trial court correctly overruled his petition for postconviction relief based upon his allegation that a witness failed to cooperate with the police and/or his attorney.

{¶ 35} In his fifth claim for relief, Perkins alleges that he was denied his due process and equal protection rights under the Ohio and U.S. Constitutions when a witness, Amy Price, purposefully withheld the name of the man she saw arguing with Adam Volkerding, one of

the victims.

{¶ 36} At trial, Price testified that Perkins did not commit the offenses in question. Instead, Price claimed in her testimony that the perpetrator was a much taller and larger man than Perkins. Price's testimony was detailed and very much supported Perkins' defense. It is unlikely that if Price identified whom she believed to be arguing, the outcome of the case would change. Simply stated, at trial, Price's testimony suggested that an unnamed individual was the actual assailant. The name of that person was not relevant. The sole question before the jury was whether Perkins was the assailant. If the jury believed Price's testimony, it could have found Perkins not guilty.

{¶ 37} Furthermore, Perkins again relies on Wells' affidavit instead of obtaining an affidavit from Price. As such, the affidavit is nothing more than hearsay. For these reasons, Perkins' fifth claim for relief was correctly disposed of by the trial judge.

{¶ 38} In his sixth claim for relief, Perkins asserts that he was denied his due process and equal protection rights because of ineffective assistance of counsel. Perkins alleges that counsel was ineffective because he failed to move the court to dismiss the charges against him because the police did not retain the weapon used in the assaults.

{¶ 39} Perkins' claim of ineffective assistance of counsel in regards to the collection of evidence could have been raised on direct appeal in *State v. Perkins*, 2009-Ohio-6696, and thus is barred by the doctrine of res judicata. Moreover, Perkins cites no authority for his assertion that a felony indictment should be dismissed because a single piece of evidence was not preserved.

{¶ 40} In his seventh and final claim for relief, Perkins alleges that he was denied his

due process and equal protection rights guaranteed under the Ohio and U.S. Constitutions. These alleged violations occurred when the police failed to preserve possibly exculpatory evidence.

**{¶ 41}** A defendant's due process rights are violated when materially exculpatory evidence is suppressed. *Brady v. Maryland* (1963), 373 U.S. 83, 87. This is true regardless of whether the state acted in good or bad faith. *State v. Johnston* (1988), 39 Ohio St.3d 48, 60. Perkins alleges that the police acted in bad faith. In support of his allegation, Perkins says that the police officers said to each other, "[j]ust write this off as a bar brawl." He further relies on testimony at trial where officers admitted to making a mistake in not retaining possession of the pool stick as evidence.

**{¶ 42}** In affirming Perkins' convictions, this court stated:

**{¶ 43}** "Finally, although the investigating officer indicated that he had been relatively new at this job, and that, in hindsight, he would have performed a more complete investigation at the scene, there is nothing in this record to support a finding that the initial investigation resulted in a wrongful conviction. The outcome of this case depended on the jury's evaluation of eyewitness testimony, including the jury's assessments of the credibility of the various witnesses." *State v. Perkins*, 2009-Ohio-6696, at ¶31.

**{¶ 44}** As the issue of possibly exculpatory evidence not being retained by the police investigators was raised on direct appeal, it is barred by the doctrine of res judicata. Furthermore, Perkins does not show that the evidence was exculpatory. Had the pool stick used against the victims been retained it would not have presumptively served to exculpate Perkins. Perkins' theory that the pool stick may have contained DNA or fingerprint evidence

is speculative. It is equally possible that no such evidence could have been recovered from that object. As a result, the trial judge correctly overruled Perkins' petition for postconviction relief based on the police not preserving possibly exculpatory evidence.

{¶ 45} As such, Perkins' second assignment of error is without merit.

{¶ 46} Perkins' first assignment of error is:

{¶ 47} "THE TRIAL COURT ERRED BY NOT GRANTING AN EVIDENTIARY HEARING ON HIS MOTION FOR NEW TRIAL WHEN THE FACTS, CLAIMS, AND ALLEGATIONS, AND EXHIBITS AND EVIDENCE ATTACHED TO THE MOTION WARRANTED A HEARING BECAUSE OF THE FACT THAT IF THE FACTS ALLEGED WERE TRUE, THEN BY USING THE COURT'S POWER OF SUBPOENA THE FACTS COULD BE MORE FULLY DEVELOPED ON THE RECORD AT A HEARING."

{¶ 48} Perkins argues that sufficient evidence was attached to his motion for new trial, which if true, "could have reasonably changed the outcome of the trial," thereby making it improper for the trial court to deny the motion without first having a hearing.

{¶ 49} A criminal defendant is permitted to file a motion under Crim.R. 33(A)(6) for new trial upon grounds that new evidence material to the defense has been discovered, which the defendant could not have discovered and produced at trial with reasonable diligence. *State v. Parker*, 178 Ohio App.3d 574, 2008-Ohio-5178, at ¶15.

{¶ 50} Specifically, Crim.R. 33(A)(6), provides:

{¶ 51} "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:

{¶ 52} "***

{¶ 53} "When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case."

{¶ 54} Crim.R. 33 limits the amount of time an individual has to move for a new trial on account of newly-discovered evidence.

{¶ 55} "Motions for a new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period." Crim.R. 33(B).

{¶ 56} "[A] party is unavoidably prevented from filing a motion for new trial if the party did not have knowledge of the existence of the ground supporting the motion for new trial and could not have learned about the existence of that ground within the time prescribed for filing the motion." *State v. Walden* (1984), 19 Ohio App.3d 141, 145-146.

{¶ 57} Trial courts have the inherent power necessary to grant a new trial based on newly-discovered evidence, pursuant to Crim.R. 33. See, e.g., *State v. LaMar*, 95 Ohio St.3d

181, 2002-Ohio-2128, at ¶82. The newly-discovered evidence must show a strong probability of changing the result if a new trial is granted. *State v. Perdue*, Mahoning App. No. 04 MA 119, 2005-Ohio-2703, at ¶16. The burden of establishing a strong probability of a different result rests on the petitioner. *State v. Holmes*, Lorain App. No. 05CA008711, 2006-Ohio-1310, at ¶15, citing *State v. Luckett* (2001), 144 Ohio App.3d 648, 661.

{¶ 58} "To prevail on a motion for new trial based upon newly discovered evidence, Defendant must show that the new evidence: (1) discloses a strong probability that the result of the trial would be different if a new trial were granted; (2) has been discovered since the trial; (3) is such as could not have been discovered before the trial through the exercise of due diligence; (4) is material to the issues; (5) is not merely cumulative to former evidence; and (6) does not merely impeach or contradict the former evidence." *State v. Taylor*, Montgomery App. No. 23916, 2011-Ohio-2563, at ¶16, citing *State v. Petro* (1947), 148 Ohio St. 505, syllabus. (Secondary citation omitted.)

{¶ 59} The decision of the trial court on a Crim.R. 33 motion for new trial will not be reversed absent an abuse of discretion. *State v. York*, Greene App. No. 2000 CA 70, 2001-Ohio-1. (Citation omitted.)

{¶ 60} In support of his motion for a new trial, Perkins put forth 11 claims of newly-discovered evidence. These claims are nearly identical to those advanced by Perkins in his petition for postconviction relief.

{¶ 61} His first three claims to support his motion relate to the juror who allegedly slept through part of the trial. To substantiate his allegation, he relies on statements made to Wells by three individuals. These statements constitute hearsay. Additionally, the

allegations, even if true, do not disclose a strong probability that the result will change if a new trial is granted. Indeed, the matter of juror misconduct was discussed at sentencing and Perkins' counsel found insufficient basis to pursue the matter further. Because there is not a strong probability that the outcome of the case will change if evidence on juror misconduct is introduced, the trial court was correct in overruling Perkins' motion for new trial based on the alleged juror misconduct.

{¶ 62} In his fourth claim for a new trial, Perkins identifies a new witness. The witness, Stephanie Caudill, was discovered by Wells and was allegedly present at the bar the night in question. However, Perkins notes that "she left the bar before the assaults had happened." Because she was not present at the time of the altercation, her testimony does not have a strong probability of leading to a different result if a new trial is granted. Furthermore, Perkins failed to demonstrate that Caudill could not be located before the trial. For these reasons, the trial court correctly overruled Perkins' motion for new trial based on the newly-discovered witness.

{¶ 63} In his fifth claim in support of his motion for new trial, Perkins relies on Wells' affidavit, which shows that one of his witnesses, Tracy Lilly, can now identify the actual perpetrator. At trial, Lilly testified as to the description of the individual she saw throwing billiard balls in the bar earlier in the evening. However, at the time she testified, she did not know that individual's name. It is unlikely that if Lilly named the individual that she described the outcome of the case would change. At trial, Lilly testified that she saw an unnamed individual throwing pool balls and that she asked that individual to stop. The name of that person was not relevant. The sole question before the jury was whether Perkins was

the assailant.

{¶ 64} Also, Perkins again relies on Wells' affidavit instead of obtaining an affidavit directly from the potential witness. The affidavit is nothing more than hearsay. The trial court correctly disposed of Perkins' fifth claim in support of his motion for new trial.

{¶ 65} In his sixth claim in support of his motion for new trial, Perkins returns to the testimony of Amy Price. Perkins urges us to find that Price purposefully withheld the name of the man she saw involved in the attacks, and in doing so, disclosed a strong probability of him prevailing at trial, thus requiring a new trial to correct this deficiency. As discussed in regards to Perkins' petition for postconviction relief, there is no evidence that a strong probability of a different outcome exists if Perkins is granted a new trial. It is unlikely that if Price identified this individual the outcome of the case would change. Furthermore, Perkins again relies on the hearsay evidence of Wells instead of obtaining an affidavit from Price. For these reasons, Perkins' sixth claim in support of his motion for a new trial was correctly disposed of by the trial court.

{¶ 66} Perkins' seventh piece of new evidence in support of his motion for new trial is Wells' affidavit, which alleges that she is now able to identify the culprit. This court again emphasizes that Wells testified at trial. The jury, as evidenced by its conviction of Perkins, did not find Wells credible. Because Wells can now assign a name to the mystery person she described at trial does not mean that her testimony would be taken as credible. For this reason, the new evidence offered by Wells does not disclose a strong probability that it will change the result if a new trial is granted. For that reason, the trial judge was correct in overruling Perkins' motion for new trial based on Wells' newly-discovered evidence.

{¶ 67} Perkins' eighth piece of evidence in support of his motion for new trial is the testimony of a bartender working at Belmont Billiards the night the assault took place. Wells filed an affidavit, which says the witness was afraid to come forward because she did not want her probation officer to find out she was working in a bar.

{¶ 68} In addition to constituting hearsay, the trial judge found that Perkins did not establish by a clear and convincing margin that he was unavoidably prevented from learning the testimony of the bartender in question during the 120-day time period. Also, Perkins does not show that the additional testimony would likely lead to a different outcome at a new trial. The trial court correctly disposed of Perkins' motion for new trial based on evidence of another defense witness.

{¶ 69} In his ninth claim in support of his motion for new trial, Perkins presents evidence that he now feels safe to come forward and identify the real perpetrator. Because of an alleged threat on his life, Perkins was fearful to testify at trial. According to Perkins, he is no longer fearful of coming forward with his exonerating testimony because the individual he believes is responsible for the offense in question is now in prison. In his brief, Perkins acknowledges having known the identity of the individual he believes is responsible for the crimes well before trial. His decision not to testify was freely made. The alleged threats do not make Perkins exempt from Crim.R. 33 requirements that evidence in support of a motion for new trial be newly discovered. As his ninth claim contains no new evidence, it was correct for the trial judge to dispose of Perkins' motion for new trial based on Perkins' decision to withhold information.

{¶ 70} In his tenth claim in support of his motion for new trial, Perkins presents

evidence contained in phone calls made from jail. Perkins filed a motion to obtain a recording of these calls, but that motion was denied. The calls in question were all made within the 120-day window for filing a timely motion for new trial. The trial court found that Perkins does not establish by clear and convincing evidence that he was unavoidably prevented from discovering the evidence during the 120-day time period. The trial court's decision denying the motion for new trial based on the phone conversations placed by Perkins while in jail is supported by the evidence. In his motion for new trial, Perkins fails to show any clear and convincing reason why he was unduly delayed in filing a motion for new trial based on the evidence discovered in the phone calls. For this reason, the trial court properly denied Perkins' motion for new trial so far as it was based on the phone conversations.

{¶ 71} In his eleventh and final claim in support of his motion for new trial, Perkins presents new evidence that a juror allegedly consumed alcohol while at lunch during trial. As discussed earlier, to support his allegation, Perkins relies on information collected by Wells. Wells claims to have spoken with an employee of Frank's Tavern, who allegedly served an alcoholic beverage to a member of the jury in Perkins' case. Consumption of alcohol by jurors could rise to the level of misconduct. However, Perkins relies on hearsay evidence. Furthermore, Perkins does not show that the newly-discovered evidence of the alleged misconduct is material to the issues or discloses a strong probability that it will change the result if a new trial is granted. Therefore, this court finds that the trial court did not err in determining that Perkins was not entitled to a hearing or a new trial on the basis of the alleged consumption of alcohol by a juror while at lunch.

{¶ 72} Because none of the new evidence put forth in support of his Crim.R. 33

motion for new trial is such that it would lead to a strong probability of a different outcome, the trial court did not err by denying his motion for new trial.

**{¶ 73}** Perkins' first assignment of error is without merit.

**{¶ 74}** The judgment of the Montgomery County Court of Common Pleas is affirmed.

. . . . . . . . . . . . . .

GRADY, P.J., and FROELICH, J., concur.

(Hon. Timothy P. Cannon, Eleventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)

Copies mailed to:

Mathias H. Heck, Jr.
R. Lynn Nothstine
Jesse E. Perkins
Hon. Mary K. Huffman