[Cite as *State v. Brown*, 2012-Ohio-417.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24473 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 02-CR-470 |
| v. | : | |
| | : | |
| JEROME A. BROWN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

## **O P I N I O N**

. . . . . . . . . .

Rendered on the ___3rd___ day of _____February_____, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by JOHNNA M. SHIA, Atty. Reg. #0067685, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

KENNETH R. SPIERT, Atty. Reg. #0038804, Office of the Ohio Public Defender, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1}  Jerome Brown appeals from an order of the trial court denying his motion for a new trial.  Brown advances three assignments of error on appeal.  First, he contends the trial court erred

in overruling his amended motion for a new trial, because he presented new evidence satisfying the requirements for such relief. Second, he claims the trial court erred in overruling his amended motion for a new trial based on a finding that he failed to file the motion within a reasonable time. Third, he argues that the trial court erred in overruling his motion without holding a hearing.

{¶ 2} We sustain Brown's first two assignments of error, thereby rendering his third assignment of error moot.

## I. Brown Is Found Guilty of a Home-Invasion Robbery and Shooting.

{¶ 3} Brown was convicted in 2002 of Aggravated Robbery, Burglary, and Felonious Assault, all with firearm specifications. The convictions stemmed from a home-invasion robbery and shooting that occurred inside an apartment on Loffer Court, which runs directly off of State Route 741 just north of the Dayton Mall.

{¶ 4} Paul Dorsey testified that two intruders were waiting inside his apartment and assaulted him when he entered. After a struggle, the parties proceeded upstairs, where Dorsey attempted to retrieve a nine-millimeter, semi-automatic handgun from under a bed. When Dorsey chambered a round in the gun, the taller of the two intruders shot him in the leg. Dorsey testified that he returned fire, hitting the taller intruder, who was standing in front of the shorter intruder.

{¶ 5} Brown was found minutes later on State Route 741 near the entrance to the apartment complex. He had been run over by a car and was suffering from a gunshot wound to his abdomen. He matched a general description of one of the assailants provided by Dorsey and others. The bullet in Brown's abdomen became lodged near his spine, and doctors made a medical decision not to remove it. Although Brown presented no evidence at trial, defense

counsel's theory was that the two intruders had encountered him, and shot him while they were fleeing the scene. The State's theory was that Brown was one of the intruders, and that he had been shot by Dorsey inside the apartment.

{¶ 6}   Brown appealed from his conviction and sentence.   He argued that the convictions were against the manifest weight of the evidence.   We affirmed, reasoning as follows:

> The State's theory was that Dorsey had succeeded in wounding one of his assailants, and that Brown's appearance, just minutes later, lying in the middle of a state highway in the direction in which the perpetrators were fleeing from the scene of the crime, with a gunshot wound to his abdomen, is strong inferential proof that Brown was the wounded perpetrator.   Brown offered the theory that he had been shot by the two perpetrators as they were fleeing, but offered no evidence in support of that proposition.
>
> The difficulty with the State's theory, as Brown notes, is that the proof that one of the perpetrators was wounded was controverted.   One witness testified that he heard only two shots, and Dorsey, himself, initially told police that he had fired only one shot.   Even more troubling is the fact that only two casings from fired rounds were recovered from Rogers' apartment, and these are accounted for by the bullet that struck Dorsey and the bullet fired from Dorsey's gun that lodged in the wall.   The State offered some evidence that casings can wind up in clothing, or otherwise prove impossible to locate.
>
> In his brief, Brown asserts that Miamisburg police officer Bell testified that Brown's clothing was searched for the missing casing, but it appears from our review of the record that Bell was referring to a search of Dorsey's clothing.
>
> In any event, there is some evidence, albeit controverted, that Dorsey wounded one of his assailants.   There is no evidence in the record that Brown was shot by one of the perpetrators.   As the State notes, Brown's having collapsed in the middle of a state highway is suggestive that he was attempting to flee the scene.

*State v. Brown*, 2nd Dist. Montgomery No. 19417, 2003-Ohio-1376, at ¶ 28-31.

{¶ 7}   In 2006, Brown moved for a new trial under Crim.R. 33.   In support, he explained that the bullet lodged in his body had migrated from the spinal area and was going to be removed. In connection with his motion, he asked that the bullet be preserved and tested.   The trial court

scheduled a hearing on Brown's motion and ordered the bullet preserved for testing. The record contains an October 2006 report from the Miami Valley Regional Crime Laboratory concluding that the bullet removed from Brown's body was "typical of a .44 caliber" bullet. Despite the existence of this evidence, the record contains no ruling on Brown's 2006 motion for a new trial.

{¶ 8}   After obtaining new counsel, Brown moved in 2009 for the appointment of his own expert to examine the bullet at issue. In that motion, Brown noted that his new-trial motion remained pending. The trial court granted the motion for additional testing. Thereafter, on March 29, 2009, Brown moved for leave to file an amended motion for a new trial. In support, he attached a report from his own expert, who had concluded that the bullet removed from his body could not have been fired from Dorsey's nine-millimeter handgun. On May 3, 2010, the trial court sustained the motion for leave to file an amended motion for a new trial. Brown filed his amended motion a week later.

{¶ 9}   The trial court overruled the amended motion for a new trial in a nine-page decision and entry filed January 7, 2011. The trial court found no strong probability of a different result if a new trial were granted. It also concluded that Brown's amended motion for a new trial had not been filed within a "reasonable time." From the order denying his motion for a new trial, Brown appeals.

## II.   The New Evidence that Brown Cannot Have Been Shot By Dorsey Creates a Sufficient Probability of a Different Result to Justify a New Trial.

{¶ 10} Brown's First Assignment of Error is as follows:

The court committed prejudicial error when it overruled Mr. Brown's amended motion for a new trial, because the new evidence is material to the defense and

otherwise satisfies the requirements of *State v. Petro* (1947), 148 Ohio St. 505, 76 N.E.2d 370, and Criminal Rule 33.

{¶ 11} We review a trial court's ruling on a motion for a new trial motion for an abuse of discretion. *State v. Taylor*, 2nd Dist. Montgomery No. 23916, 2011-Ohio-2563, at ¶ 59.

{¶ 12} Brown contends that the ballistic evidence that Dorsey's nine-millimeter handgun could not have fired the .44 caliber bullet recovered from his body creates a strong probability of a different result if a new trial were granted. Brown claims the trial court erred in overruling his motion based on a new theory offered by the State to account for his having been shot that is consistent with his guilt of the offenses with which he was charged – that the unidentified shorter intruder actually shot Brown, the taller intruder, as Brown turned to flee Dorsey's apartment. Brown contends that this is pure speculation. According to Brown, the theory that the shorter intruder was armed with a .44 caliber handgun and that he shot the taller intruder has no basis in fact or in evidence.

> To prevail on a motion for new trial based upon newly discovered evidence, Defendant must show that the new evidence: (1) discloses a strong probability that the result of the trial would be different if a new trial were granted; (2) has been discovered since the trial; (3) is such as could not have been discovered before the trial through the exercise of due diligence; (4) is material to the issues; (5) is not merely cumulative to former evidence; and (6) does not merely impeach or contradict the former evidence.

*State v. Taylor*, supra, at ¶ 16, citing *State v. Petro* (1947), 148 Ohio St. 505, syllabus.

{¶ 13} We conclude that as a result of Brown's new evidence, there is a strong probability of a different result at trial. Brown's new evidence establishes, conclusively, that Dorsey did not shoot him in the abdomen with a nine-millimeter handgun, as the State argued at trial. Brown and the State now agree that the nine-millimeter handgun Dorsey turned over to police could not have fired the .44 caliber bullet removed from Brown's body.

{¶ 14} Furthermore, Brown and the State now actually agree that the shorter intruder shot Brown in the abdomen with a .44 caliber handgun. The only real question is whether the shorter intruder shot Brown inside Dorsey's apartment, or outside near State Route 741.

{¶ 15} In its appellate brief, the State contends the shorter intruder shot Brown in the abdomen with a .44 caliber handgun as Brown turned to leave the apartment. For his part, Brown argued below, and continues to assert on appeal, that one of the two intruders shot him in the abdomen near State Route 741 as they fled.

{¶ 16} As set forth above, we know the taller intruder shot Dorsey with a nine-millimeter handgun. The evidence on that point is uncontroverted. We also know, according to Brown and his new evidence, that one of the intruders shot Brown in the abdomen with a .44 caliber revolver. Given that the taller intruder was armed with a nine-millimeter, semi-automatic handgun, it follows that the shorter intruder, armed with the .44 caliber revolver, must have shot Brown. Therefore, we disagree with Brown's claim that it is mere speculation to say that the shorter intruder is responsible for shooting him. Based on the evidence in the record, this is the most reasonable inference.

{¶ 17} In light of Brown's new evidence, the disputed issue is no longer the identity of his shooter but rather where that shooting occurred. The evidence at trial strongly suggested that Dorsey shot Brown, in Dorsey's apartment, which meant that Brown was one of the intruders. Dorsey testified that he had shot at one of the intruders, and that he had reason to believe he had hit the intruder. This would have accounted for Brown's having been found, wounded, not far from the apartment, not long thereafter. This strong proof that Brown was in Dorsey's apartment – because Brown must have been there if Dorsey shot him – is no longer viable in view of

Brown's new evidence establishing that Dorsey did not shoot Brown. Now, the only evidence tending to prove that the shot that wounded Brown was fired inside the apartment is the negative, and weaker, evidence that there was no testimony presented, by either party, that a gunshot was heard outside the apartment near State Route 741. Offsetting that weak, negative evidence, is the negative evidence that Dorsey did not testify that one of the intruders shot the other in his apartment.

{¶ 18} There was no evidence at the trial that everyone who had been in a position to hear a gunshot outside the apartment was identified, questioned, and denied having heard a gunshot during the relevant time. Or even that there were persons in a position to have heard a gunshot that might have occurred at any place along the route from Dorsey's apartment to State Route 741. Furthermore, a single gunshot near a major highway could be mistaken for a vehicle's engine backfiring.

{¶ 19} In our view, the much weaker proof that Brown was shot inside Dorsey's apartment, resulting from the newly discovered evidence that the bullet ultimately recovered from Brown's body could not have been fired by Dorsey's gun, creates a strong probability, albeit not a certainty, of a different result upon retrial.

{¶ 20} Brown's First Assignment of Error is sustained.

### III. Brown's Motion for a New Trial Was Timely.

{¶ 21} Brown's Second Assignment of Error is as follows:

The trial court committed prejudicial error and denied Mr. Brown due process of law when it overruled Mr. Brown's motion for a new trial upon finding that he had failed to file his motion within a reasonable time, notwithstanding that the court had previously granted his motion for leave to file an amended motion for a new

trial upon making the findings required by Criminal Rule 33(B).

**{¶ 22}** Under Crim. R. 33(B):

Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

**{¶ 23}** As Brown points out, he filed his motion for a new trial on April 20, 2006, before the bullet inside his body had been removed, or, in other words, actually somewhat *before* the discovery of the new evidence. That motion was never ruled upon – it remained pending in 2010 when Brown sought leave to file, and was granted leave to file, an amended motion for a new trial. Under these circumstances, the amended motion for a new trial related back to his original motion for a new trial, which had never been ruled upon. That motion was timely filed, since it was filed in advance of the anticipated discovery of the new evidence represented by the bullet that had migrated from Brown's spinal area to a place in his body where it could safely be removed.

**{¶ 24}** Because of the delay between Brown's original motion for a new trial and his motion for leave to file an amended motion for a new trial, the trial court arguably might have been within its discretion had it denied his motion for leave to file the amended motion, but the trial court in fact *granted* Brown's motion to amend his motion for a new trial.

**{¶ 25}** Brown's Second Assignment of Error is sustained.

## IV. Whether the Trial Court Should Have Held a Hearing

**on Brown's Motion for a New Trial Is Moot.**

**{¶ 26}** Brown's Third Assignment of Error is as follows:

The trial court committed prejudicial error when it overruled Mr. Brown's amended motion for a new trial without granting a hearing on the motion. The court's error under the circumstances of this case violated Mr. Brown's due process rights under the Fourteenth Amendment to the United States Constitution and the due process clause of the Ohio Constitution.

**{¶ 27}** Brown argues that he should, at least, have had a hearing on his amended motion for a new trial. In view of our disposition of Brown's First and Second assignments of error, this assignment of error is overruled as moot. Even without a hearing, we are satisfied that Brown is entitled to a new trial based on the newly discovered evidence represented by the bullet recovered from his body.

## V. Conclusion.

**{¶ 28}** Brown's First and Second assignments of error having been sustained, the order of the trial court denying his amended motion for a new trial is Reversed. This cause is Remanded for a new trial.

. . . . . . . . . . . . .

GRADY, P.J., concurs.

HALL, J., dissenting:

**{¶ 29}** The critical issue in this case is whether the defendant has demonstrated that new evidence "discloses a *strong probability* that the result of the trial would be different * * *." *State v. Taylor*, 2nd Dist. Montgomery No. 23916, 2011–Ohio–2563, at ¶16 (emphasis added).

**{¶ 30}** The defendant did not testify at his trial. He has not presented any evidence in support of his motion for a new trial, in any form, to suggest where he was when he was shot. It is only by argument, at trial and in his motion, that Brown contends he was shot outdoors by a

perpetrator fleeing from the apartment of the victim Dorsey. Without any factual evidence that Brown was shot outside of Dorsey's apartment, I would conclude that he has not demonstrated a strong probability of a different result.

{¶ 31} It is undisputed that Dorsey was the victim of a robbery in his apartment committed by two men. During the robbery, Dorsey said he retrieved a nine-millimeter, semi-automatic handgun from under his bed. When Dorsey chambered a round in his weapon, the taller of the two intruders shot Dorsey in the leg. Dorsey returned fire and testified he hit the taller intruder, who was standing in front of the shorter one. Brown's new evidence, that the bullet removed from Brown's body was from a .44 caliber weapon, establishes conclusively that Dorsey did not shoot Brown in the abdomen with a nine-millimeter handgun, as the State had argued at trial. The nine-millimeter handgun Dorsey turned over to police could not have fired the .44 caliber bullet removed from Brown's body. This does not establish, however, that Brown is entitled to a new trial.

{¶ 32} Brown's argument, that he was shot by one of the intruders who was fleeing from Dorsey's apartment, requires the indisputable conclusion that one of the intruders had the .44 caliber weapon that shot Brown. There had been no testimony that Dorsey saw the second intruder with a weapon. But he had to have one or Brown's argument, that he was shot by a fleeing intruder, makes no sense. According to Dorsey, the bullet fired by the taller intruder struck Dorsey in the leg. That bullet went through his leg, and the floor, and was found downstairs. It was a nine-millimeter. Therefore, no matter whose theory is applied, the intruders had to have at least two weapons; the nine-millimeter that shot Dorsey and the .44 caliber that shot Brown. Without any evidence from Brown that he was shot outside the apartment, the State's current

theory, that the second intruder accidentally shot Brown when gunfire erupted, is just as likely as Brown's unsupported argument that he was shot outside by a fleeing intruder. When considered in the context of the evidence that shots were heard from the apartment, but no shots were reported outside, Brown's argument fails to demonstrate a strong probability of a different result.

{¶ 33} There are only two realistic possibilities: 1) When gunfire erupted in the apartment, the second intruder produced a .44 caliber revolver and shot toward Dorsey but struck Brown as Brown turned to flee Dorsey's gunfire (the State's current theory); and 2) One of the intruders shot Brown, for an undisclosed reason, outside the apartment as the intruders were fleeing the area (the defendant's theory).[1] The difficulty with the defendant's theory is that he has provided no evidence to support it. The wrong bullet presents an unusual conundrum. But I would hold that the defendant has failed to demonstrate a strong probability of a different result.

. . . . . . . . . . . . .

Copies mailed to:

Mathias H. Heck
Johnna M. Shia
Kenneth R. Spiert
Hon. Gregory F. Singer

---

[1]There is a third theoretical possibility. Dorsey could have shot at the intruders with two separate weapons; the nine-millimeter he reluctantly revealed (which was responsible for the bullet lodged in the wall of the apartment) and a second .44 caliber revolver with which he shot the defendant but he kept hidden from the police. But this scenario would place Brown in the apartment.