[Cite as *State v. Rossi*, 2012-Ohio-2545.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                    :

      Plaintiff-Appellee                   :            C.A. CASE NO.    24740

v.                                               :            T.C. NO.    08CRB1799

NICHOLAS ROSSI                                   :            (Criminal appeal from
                                                              Municipal Court)

      Defendant-Appellant                  :

                                                 :

          . . . . . . . . . .

**O P I N I O N**

Rendered on the _____8th_____ day of _____June_____, 2012.

. . . . . . . . . .

TROY B. DANIELS, Atty. Reg. No. 0084957 and ANDREW D. SEXTON, Atty. Reg. No.
0070892, Assistant City Prosecutors, 335 W. Third Street, Room 372, Dayton, Ohio 45402
      Attorneys for Plaintiff-Appellee

MARK J. BABB, Atty. Reg. No. 0078670, 2190 Gateway Drive, Fairborn, Ohio 45324
      Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

    **{¶ 1}**   Defendant-appellant Nicholas Rossi appeals from a decision of the Dayton

Municipal Court overruling his motion for a new trial in a written decision issued on June 1,

2011.  Rossi filed a timely notice of appeal with this Court on July 1, 2011.

{¶ 2}    Rossi was charged with one count of Sexual Imposition, in violation of R.C. 2907.06(A)(1), and with one count of Public Indecency, in violation of R.C. 2907.09(A)(1). Following a bench trial, Rossi was found guilty of both counts, and was sentenced accordingly.

{¶ 3}    Rossi appealed from his conviction and sentence. We affirmed. *State v. Rossi*, Montgomery App. No. 22803, 2009-Ohio-1963. While his appeal was pending, Rossi filed a motion for a new trial under Crim. R. 33, based upon newly discovered evidence, in the form of a posting by his victim on her MySpace page which suggested she had been lying concerning the undesirability of Rossi's advances, in order to protect her relationship with her boyfriend. The trial court overruled Rossi's motion for a new trial, finding that it did not have jurisdiction to rule on the motion while the appeal was pending.

{¶ 4}    On April 24, 2009, after we had affirmed his conviction, Rossi filed a "Motion to Have the Court Vacate its Prior Decision Overruling Defendant's Motion for a New Trial and to Continue Stay of Execution." The trial court denied this motion, finding that it did, indeed, have jurisdiction to overrule Rossi's original motion for a new trial while the appeal was pending. Rossi appealed the decision of the trial court. In *State v. Rossi*, 2d Dist. Montgomery No. 23682, 2010-Ohio-4534, we reversed the decision of the trial court. Specifically, we held that the trial court erred by failing to consider Rossi's motion for a new trial on its merits. Id.

{¶ 5}    On February 28, 2011, the trial court held a hearing on Rossi's motion for a new trial. The trial court issued a written decision overruling Rossi's motion for a new trial on June 1, 2010.

**{¶ 6}** It is from this judgment that Rossi now appeals.

**{¶ 7}** Rossi's first assignment of error is as follows:

**{¶ 8}** "THE TRIAL COURT ABUSED ITS DISCRETION BY OVERRULING DEFENDANT'S MOTION TO A NEW TRIAL."

**{¶ 9}** In his first assignment, Rossi contends that the trial court erred when it overruled his motion for a new trial. Specifically, Rossi argues that the trial court erred when it found that he had failed to properly authenticate Defense Exhibit A-1, the blog post copied from the Myspace web address which Rossi alleges was written and posted by the victim, M.G., after his trial was concluded. Accordingly, Rossi asserts that the blog post was newly discovered exculpatory evidence which established that M.G. fabricated her testimony at trial regarding the sexual assault.

**{¶ 10}** The blog post allegedly written by M.G. states as follows:

I can't forgive you for what you've done. I loved you so much and you'll never have any idea. I think it's weird because we've done so much stuff together. I can't believe I went so far by giving you everything you wanted. I wish I could lie on your chest and you would like it. I don't know what to do. *But I have done went so far by lying n* [sic] *getting some stranger to go to jail and in legal so you wouldn't think I would cheat on you even when I did slip because he was cute, but I didn't give in to my desire.* Is that not enough? I went so far to say I wanted to be with you. I

went so far to do things with you all the time. I don't understand what else I can do because you're pressing your luck, mister. I even changed my career for you so that we could work together. I'm drunk right now, but maybe when I sober we can talk about it. Because I love you and that's reason enough. ***.

{¶ 11} The decision whether to grant a motion for new trial lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990). "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248, 1252 (1985). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

{¶ 12} "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *AAAA Enterprises, Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 13} "To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has

been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947).

{¶ 14}  Trial courts have the inherent power necessary to grant a new trial based on newly-discovered evidence, pursuant to Crim.R. 33.  See, e.g., *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, at ¶82.  The newly-discovered evidence must show a strong probability of changing the result if a new trial is granted.  *State v. Perdue*, 7th Dist. Mahoning No. 04 MA 119, 2005-Ohio-2703, at ¶16.  The burden of establishing a strong probability of a different result rests on the petitioner. *State v. Perkins*, 2d Dist. Montgomery No. 24397, 2011-Ohio-5070.

{¶ 15}  "In singling out impeaching or contradicting evidence, *Petro* recognized that the nature of such evidence requires that a trial court exercise circumspection in determining whether newly discovered evidence of that character would create a strong probability of a different result, because such evidence quite often will not be likely to change the outcome. In a case where the newly discovered evidence, though it is impeaching or contradicting in character, would be likely to change the outcome of the trial, we see no good reason not to grant a new trial. [Footnote omitted.]" *Dayton v. Martin*, 43 Ohio App.3d 87, 90, 539 N.E.2d 646 (2d Dist. 1987).

{¶ 16}  At trial, M.G. testified that Rossi sexually assaulted her in between classes in a stairwell at Sinclair Community College.  Although Rossi attempted to establish that the sexual encounter between he and M.G. was consensual, the trial court found him guilty

of sexual imposition and public indecency. In his motion for a new trial, Rossi argued that the blog posted by M.G. constituted a recantation of her testimony at trial, to wit: M.G. engaged in a consensual sexual encounter with Rossi to get back at her boyfriend.

{¶ 17} "On a motion for new trial based upon grounds of newly discovered evidence, the trial court, when considering the recantation of the prosecution's primary witness, must make two findings: (1) which of the contradictory testimonies of the recanting witness is credible and true, and if the recantation is believable; (2) would the recanted testimony have materially affected the outcome of the trial?" *City of Toledo v. Easterling* (1985), 26 Ohio App.3d 59, 498 N.E.2d 198, (6th Dist. 1985). Accord, *State v. Williams*, 2d Dist. Montgomery No. 19854, 2004-Ohio-3135. "[N]ewly discovered evidence which purportedly recants testimony given at trial is 'looked upon with the utmost suspicion.'" *State v. Isham*, 2d Dist. Montgomery No. 15976, 1997 WL 24794 (Jan. 24, 1997).

{¶ 18} At the hearing on Rossi's motion for new trial, the State presented the testimony of Detective Doug Roderick, an expert in computer forensics. Det. Roderick testified that someone either altered or completely fabricated the Myspace blog post before Rossi submitted the "new" evidence to the trial court. Det. Roderick based his testimony on the fact that the date on the blog post on Defense Exhibit A-1 stated "May 16, 2008, Monday." Det. Roderick testified that this was an incorrect match of the date and the day of the week. In fact, the trial court took judicial notice that May 16, 2008, was actually a Friday. Det. Roderick testified that a computer system would never match a date with the incorrect day of the week. Thus, Det. Roderick concluded with ninety percent certainty that Defense Ex. A-1 was either altered or that it was completely fabricated and not a genuine

Myspace blog post at all.

{¶ 19}   Det. Roderick also testified that anyone familiar with the "cut," "copy," and "paste" functions of a computer with access to basic computer programs would have the capability to easily alter or fabricate a document such as Defense Ex. A-1 in order to make it appear as if a blog post was authored by another individual or alter the text of an existing blog post to suit one's purposes and then print it.   Rossi testified that he knew how to "cut," "copy," and "paste" from web pages, describing the process as "simple."   Rossi also testified that he did not witness M.G. author the blog post, nor had she ever admitted to him that she did so.   In fact, M.G. testified unequivocally that she did not author the blog post. Moreover, M.G. testified that she had never seen Defense Ex. A-1 until after Rossi's criminal trial when he filed a civil suit against her using the blog post as an exhibit in that case.

{¶ 20}   We also note that Rossi testified that he never made any effort to trace the blog post through Myspace in order to discover where the post originated.   Rossi testified that he did not trace the blog post even though he was aware that such action could be performed.   Rossi gave no reason for his failure to request that the origin of the blog post be traced.

{¶ 21}   In light of the evidence adduced at the hearing, the trial court found that Defense Ex. A-1 was "highly questionable, *** not credible and true, and [did] not carry enough weight to create a strong probability of a different result" if a new trial was granted. Upon review, we cannot find that  that the trial court abused its discretion when it rejected Rossi's Exhibit A-1 and his testimony as a basis upon which to grant his motion for a new

trial. Accordingly, the trial court did not err when it overruled Rossi's motion for a new trial.

{¶ 22} Rossi's first assignment of error is overruled.

{¶ 23} Rossi's second assignment of error is as follows:

{¶ 24} "THE TRIAL COURT ERRED IN ADMITTING THE TESTIMONY OF EXPERT TESTIMONY OF [sic] DETECTIVE RODDERICK [sic]."

{¶ 25} In his second assignment, Rossi argues that the trial court abused its discretion when it admitted the testimony of the State's expert in computer forensics, Det. Roderick. Specifically, Rossi asserts that Det. Roderick's testimony "did not aid the trier of fact in determining whether the blog posting *** was altered or fabricated."

{¶ 26} A trial court has broad discretion in determining whether to admit or exclude expert testimony, and thus, we will not reverse its decision absent an abuse of discretion. *State v. Jones*, 90 Ohio St.3d 403, 414, 2000-Ohio-187, 739 N.E.2d 300. If the elements listed in Evid. R. 702 are satisfied then the admission of expert testimony is favored. *State v. Williams*, 4 Ohio St.3d 53, 57, 446 N.E.2d 444 (1983).

{¶ 27} Evid. R. 702 permits a witness to testify as an expert if:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. ***.

{¶ 28} Under Evid. R. 702, expert testimony is allowed if scientific, technical, or other specialized training or knowledge will assist the trier of fact in understanding the evidence or determining a fact at issue. An expert witness is defined as "one who testified concerning matters of scientific, mechanical, professional or other like nature, requiring special study, experience or observation not within the common knowledge of laymen." *Landskroner v. Pub. Utils. Comm. of Ohio*, 5 Ohio St.3d 96, 97, 449 N.E.2d 760 (1983). When witnesses are deemed competent to testify as experts, the subject matter of the testimony must be relevant to a fact at issue, "either in its own content or by illuminating other evidence that is relevant to such a fact." *State v. Smith*, 84 Ohio App.3d 647, 657, 617 N.E.2d 1160 (2d Dist.1992).

{¶ 29} Det. Roderick was called by the State to testify as an expert witness in the field of computer forensics at the hearing regarding Rossi's motion for a new trial. Det. Roderick testified that he is a detective employed by the Dayton Police Department. At the time of the hearing, Det. Roderick testified that he was on loan to the Federal Bureau of Investigations (FBI) as a forensic examiner of computer digital evidence. Det. Roderick further testified that he had been working as a computer forensic specialist since 2001. Det. Roderick also testified that he was certified as a forensic computer examiner by the International Association of Computer Investigator Specialists and the International Society of Forensic Computer Examiners. Det. Roderick testified that he received forensic computer training from the FBI and National White Collar Crime Center. Accordingly, the

trial court did not err by allowing Det. Roderick to testify as an expert in forensic computer investigations.

{¶ 30} At the hearing, Rossi attempted to present the blog post as a genuine Myspace post created by M.G. Capitalizing upon his specialized technical experience as forensic computer analyst, Det. Roderick was asked to determine whether the blog post was an authentic posting, that is, whether the blog post had been altered or was completely fabricated. As previously mentioned, Det. Roderick testified that he was ninety percent certain that Defense Ex. A-1 was either altered or that it was completely fabricated and not a genuine Myspace blog post because the date at the top of the post did not match the correct day of the week. Det. Roderick's expert opinion that the blog post was altered or completely fabricated was directly relevant to whether the new evidence would create a "strong probability of changing the result if a new trial [was] granted." While it is true that he could not and did not testify regarding the identity of the individual who altered or fabricated the blog post, Det. Roderick's expert testimony assisted the trier of fact in understanding the evidentiary value of the blog post. Det. Roderick's expert testimony was highly relevant to the facts at issue. Thus, the trial court did not err when it found that Det. Roderick's testimony was admissible as expert witness testimony pursuant to Evid. R.702.

{¶ 31} Rossi's second assignment of error is overruled.

{¶ 32} Rossi's third and final assignment of error is as follows:

{¶ 33} "MR. ROSSI'S SIXTH AMENDMENT RIGHT TO REPRESENTATION WAS VIOLATED BY HIS TRIAL COUNSEL'S INEFFECTIVE ASSISTANCE."

{¶ 34} In his final assignment, Rossi contends that the he received ineffective

assistance when his previous attorneys failed to send an electronic file of the blog post to the State in order to demonstrate the post was authentic and had not been tampered with or fabricated.

{¶ 35} "We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136, * * * . Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.* Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." (Internal citation omitted). *State v. Mitchell*, 2d Dist. Montgomery No. 21957, 2008-Ohio-493, ¶ 31.

{¶ 36} An appellant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). The test for a claim of ineffective assistance of counsel is not whether counsel pursued every possible defense; the test is whether the defense chosen was objectively reasonable. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reviewing court may not second-guess decisions of

counsel which can be considered matters of trial strategy. *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985). Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available. *State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

{¶ 37} In the instant case, Rossi's claim that he transmitted the electronic file of the blog post to all of his former attorneys is not supported by the record. Initially, we note that the record establishes that Rossi did not provide the attorney who represented him at the motion for a new trial hearing with the electronic file. In fact, the record establishes that when his attorney asked for a copy of the electronic file, Rossi informed him that the digital file no longer existed.

{¶ 38} Additionally, the record is devoid of any facts which establish that Rossi's prior trial counsel failed to preserve the electronic file allegedly emailed to her by Rossi. Rossi's trial counsel was not called to testify at the hearing, and there is no record of a prior statement made by her regarding the existence of an electronic file containing the blog post.

{¶ 39} We also note that the trial court provided an opportunity at the hearing for a continuance so that Rossi could provide his attorney and the State with an electronic copy of the file. The trial court offered the continuance because Rossi asserted at the hearing that he had a copy of the electronic file in his possession. Rossi, however, declined the trial court's offer of a continuance because he stated that he did not want to have to return to Dayton, Ohio. Rossi cannot now blame his prior attorneys for his decision to waive a continuance that would have allowed him to provide the State with an electronic file of the blog post which he claimed to have in his possession at the time of the hearing.

**{¶ 40}** Lastly, the record fails to definitively establish what an analysis of the electronic file of the blog post would have revealed or how it would have changed the outcome of the trial. Rossi's argument in this regard fails. Simply put, there is nothing in the record which supports Rossi's claim that he received ineffective assistance of counsel.

**{¶ 41}** Rossi's third and final assignment of error is overruled.

**{¶ 42}** All of Rossi's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

GRADY, P.J. and HALL, J., concur.

Copies mailed to:

Troy B. Daniels
Andrew D. Sexton
Mark J. Babb
Hon. Carl Sims Henderson