[Cite as *State v. Haynes*, 2013-Ohio-2401.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-A-0032** |
| MARVIN R. HAYNES, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2011 CR 437.

Judgment: Affirmed.

*Thomas L. Sartini*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Judith M. Kowalski*, 333 Babbitt Road, #323, Euclid, OH 44123 (For Defendant-Appellant).


COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Marvin R. Haynes, appeals from the June 29, 2012 judgment of the Ashtabula County Court of Common Pleas, sentencing him for importuning.

{¶2} On October 27, 2011, appellant was indicted on three counts: count one, unlawful sexual conduct with a minor, a felony of the third degree, in violation of R.C. 2907.04(A) and (B)(3); count two, sexual imposition, a misdemeanor of the third degree, in violation of R.C. 2907.06(A)(4); and count three, importuning, a felony of the fifth

degree, in violation of R.C. 2907.07(B)(1). Appellant pleaded not guilty to all charges at his arraignment.

{¶3} Thereafter, appellant filed a motion to suppress statements and a motion to suppress intercepted phone conversations. In his motions, appellant alleged that his statements to police were involuntarily given in violation of his *Miranda* rights and that his Fourth Amendment rights were violated when his phone conversations with C.R. ("the victim") were intercepted. Appellee, the state of Ohio, filed a response to appellant's motions.

{¶4} A suppression hearing was held on January 13, 2012. The only witness to testify was Detective Mike Rose with the Ashtabula County Sheriff's Department ("ACSD") and the Ashtabula County Children's Services. Detective Mike Rose testified for the state that he primarily investigates sex abuse cases. He first became affiliated with the victim at the Ashtabula County Youth Detention Center ("YDC"). He later received information from the victim's therapist, Steven Heath ("Heath"), regarding an allegation of sexual abuse between 43-year-old appellant, and the victim, who was 15.

{¶5} Detective Mike Rose subsequently arrested the victim on a probation violation in another matter and interviewed him at the ACSD. The victim, who was in state custody, agreed to make controlled calls to appellant, with respect to the instant matter. The purpose of the calls was to get appellant to admit to having sexual contact with him. The victim (as a victim and not as a defendant in this situation) voluntarily consented to having the calls recorded and signed a consent form. Detective Mike Rose previously spoke to the victim's mother about recording conversations between her son and appellant. She did not object to the controlled calls. Thus, three calls took

place between appellant and the victim from the victim's mother's cell phone. Appellant sounded nervous and evasive. He made attempts to manipulate the victim into telling a story consistent with his own. However, no admission was made by appellant during any of the calls.

{¶6} Following the suppression hearing, the trial court held that appellant's motion to suppress statements to police was rendered moot by the state's agreement not to use those statements at trial. In addition, the court overruled appellant's motion to suppress the intercepted phone conversations.

{¶7} A jury trial commenced on April 2, 2012. The state called five witnesses and appellant called none to testify on his behalf.

{¶8} The victim was the first to testify. The victim met appellant when the victim was 15 years old through some buddies and the two became friends. Appellant and the victim met a few times a week and communicated by phone several times a day. They rode four wheelers, worked in appellant's garage, and ate meals together. Appellant later obtained a landscaping job for the victim. They worked together almost every day. The victim rode to and from work with appellant and would occasionally sleep at his home.

{¶9} During the summer of 2010, the victim testified that while he was in appellant's bedroom playing on the computer, appellant sat beside him and touched his thigh. The victim told appellant to stop and pushed his hand away. However, according to the victim, appellant continued touching his thigh and unfastened the victim's pants. The victim was unable to leave because appellant was blocking his way. The victim stated that appellant began touching the victim's "private area" while masturbating

himself. After appellant "finished," the victim left. While the victim was on his way home, appellant sent him a text message. However, the victim did not respond to the text. Appellant later called the victim to see if he made it home okay. After that incident, the victim continued riding to and from work with appellant. He also continued going to appellant's home.

{¶10} About a month after that first incident, a second, similar incident occurred in appellant's bedroom while the victim was on the computer. The victim testified that appellant touched his thigh, unfastened his pants, and touched his "privates," while appellant was masturbating himself. The victim said that this contact "upset" him. Nevertheless, the victim continued going to appellant's home and working with him.

{¶11} A third incident occurred on September 22, 2010. While working on a remote control car in appellant's garage, the car's battery exploded on them. After the explosion, the victim went inside appellant's house to take a shower. After showering, the victim, wearing only a towel, went into appellant's bedroom to get dressed.

{¶12} Appellant entered the room and looked at something on the computer. The victim testified that appellant began touching his leg and tried to undo his towel. Appellant touched the victim's "private area" and told him to get on the bed. The victim said that although he did not comply with appellant's request, appellant forced him onto the bed. Appellant shut off the light and locked the door, since appellant's mother was in the house. Appellant climbed onto the bed and began touching the victim. According to the victim, appellant made him get on his hands and knees. Appellant then penetrated the victim's anus with appellant's penis.

4

{¶13} While having sex with the victim, appellant heard a noise in the kitchen, and left the bedroom to check. Appellant came back into the bedroom to tell the victim that the victim's mother was there. The victim was afraid to tell his mother what had happened. The victim was also afraid to tell police, who later arrived at appellant's home, what had taken place.

{¶14} The victim's mother testified that she went to appellant's home to pick up her son. When she arrived, appellant's mother invited her in and told her that her son was in the bedroom. The victim's mother attempted to open the bedroom door, but appellant came out of the bedroom, wearing only a pair of jeans. The victim's mother asked what was going on. Appellant did not answer her. Appellant stood in the doorway with his hand on the door knob. The door remained closed. Appellant eventually allowed the victim's mother past him and she opened the door. The victim's mother saw her 15-year-old naked son on appellant's bed. The victim's mother called the police.

{¶15} Deputy Brian Rose with the ACSD arrived at appellant's residence. Deputy Brian Rose met with the victim's mother and father, who later arrived. The three conversed in the driveway. After speaking with the victim's parents, Deputy Brian Rose went into the house. He spoke with appellant, appellant's mother, and the victim. Deputy Brian Rose testified that the victim seemed very upset, and would not calm down or follow instructions. The victim did not tell anyone that day that appellant had anal sex with him. The victim was taken to YDC.

{¶16} Heath was the victim's therapist at YDC beginning in February of 2011. Heath testified that the victim disclosed information to him on two occasions regarding

5

allegations of sexual abuse between appellant and the victim. As a result of this information, Heath contacted Detective Mike Rose.

{¶17} Based on the information he received from Heath, Detective Mike Rose testified that he further investigated the matter. Detective Mike Rose interviewed the victim, who was in custody on another matter. The victim agreed to make controlled calls to appellant in order to get appellant to admit to the sexual abuse. Again, the victim voluntarily consented to having the calls recorded and signed a consent form, labeled as Exhibit 2. Three calls took place between appellant and the victim, which were played for the jury and marked as Exhibit 1. Appellant exhibited "unusual" behavior in that he sounded nervous and evasive, and attempted to manipulate the victim into telling a story consistent with his own. However, he made no admission during any of the calls.

{¶18} After the state rested, defense counsel objected to Exhibits 1 and 2. The court overruled those objections. Defense counsel also moved for acquittal pursuant to Crim.R. 29. The court granted the motion as to count two, sexual imposition, but overruled it as to counts one, unlawful sexual conduct with a minor, and three, importuning.

{¶19} The defense did not put on a case. Closing arguments were heard and the case was submitted to the jury. The jury found appellant not guilty on count one, unlawful sexual conduct with a minor, but guilty on count three, importuning. Sentencing was deferred.

{¶20} At the beginning of the sentencing hearing that was to take place on May 25, 2012, defense counsel introduced a notarized statement signed by the victim

6

indicating that he had given false testimony at the jury trial. The court continued the sentencing hearing to allow further investigation and the opportunity for appellant to file a motion for new trial, if warranted.

{¶21} The state later spoke with the victim, who went voluntarily to the courthouse. The victim confirmed that he signed the statement recanting his testimony but indicated that he did so because he was threatened by appellant. However, the victim denied that he had lied to the jury.

{¶22} As a condition of appellant's bond, he was to have no contact with the victim. Thus, the state filed a motion to revoke appellant's bond. At the bond hearing, the victim testified that about a week after the trial, Gary Whitney ("Whitney"), a friend of appellant's, contacted him and requested he write a letter stating that his trial testimony was false. The victim stated Whitney contacted him several times.

{¶23} The victim eventually spoke to appellant on Whitney's phone. The victim testified appellant asked him to write a letter saying that his trial testimony was false and that his mother had put him up to it. The victim claimed he did not want to write the letter but was persuaded to do so. He indicated that appellant had come to his house several times to cut brake lines and caused damage to his truck. The victim recanted his testimony because he did not know what else appellant would do.

{¶24} The victim ended up writing the letter and Whitney typed it. The victim stated that nothing he wrote in the letter was true. He testified appellant told him to bring copies of the letter to the court, the prosecutor, and his attorney. The victim was provided with gas money to do this. Following the hearing, the court granted the state's motion to revoke bond.

**{¶25}** On June 1, 2012, appellant filed a motion for new trial. The state filed a response in opposition. The court overruled appellant's motion on June 15, 2012, and reset the matter for sentencing.

**{¶26}** On June 29, 2012, the trial court sentenced appellant to 90 days in jail, with 33 days of credit, and ordered him to serve two years probation. Appellant filed a timely appeal, asserting the following eight assignments of error:

**{¶27}** "[1.] The trial court erred to the prejudice of the appellant by failing to grant the motion to suppress evidence.

**{¶28}** "[2.] The trial court abused its discretion and erred to the prejudice of the appellant by allowing the tapes to be played to the jury, as their content was more prejudicial than probative, thus depriving the defendant of due process and his right to a fair trial.

**{¶29}** "[3.] The trial court erred to the prejudice of the appellant by failing to grant a mistrial, after the prosecutor questioned a witness about the appellant's past criminal history.

**{¶30}** "[4.] The trial court erred to the prejudice of the appellant by not granting the appellant's motion for a new trial, despite the fact that the alleged victim had completely recanted his testimony in a notarized statement.

**{¶31}** "[5.] The appellant was denied a fair trial by reason of prosecutorial misconduct, as the prosecutor in closing argument repeatedly made reference to testimony that had been deemed inadmissible, over the objections of defense counsel, and in violation of the court's instruction.

**{¶32}** "[6.] The appellant was denied due process of law and the right to a fair trial based on the cumulative errors of the trial court and the prosecutor.

**{¶33}** "[7.] The trial court erred to the prejudice of the appellant by denying his motion for acquittal pursuant to Ohio Criminal Rule 29.

**{¶34}** "[8.] The appellant's convictions are against the manifest weight of the evidence."

**{¶35}** In his first assignment of error, appellant argues that the trial court erred in failing to grant his motion to suppress. Appellant maintains there was a lack of foundation for introducing the telephone recording between himself and the victim. He alleges that Detective Mike Rose did not authenticate the recording. Appellant also stresses the recording was a copy, rather than the original.

**{¶36}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. During a hearing on a motion to suppress, the trial judge acts as the trier of fact and, as such, is in the best position to resolve factual questions and assess the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence. *Burnside* at ¶8. Thereafter, the appellate court must determine, without deference to the trial court, whether the applicable legal standard has been met. *Bainbridge v. Kaseda*, 11th Dist. No. 2007-G-2797, 2008-Ohio-2136, ¶20. Thus, we review the trial court's application of the law to the facts de novo. *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

9

**{¶37}** To be admissible, a sound recording of a telephone call must be "authentic, accurate, and trustworthy." *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶109.

**{¶38}** Evid.R. 901 governs the authentication of demonstrative evidence such as recordings of telephone conversations. Evid.R. 901(A) states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(B) provides examples of methods for authenticating evidence, however, the rule also states that these are examples and not limitations on the way evidence may be authenticated.

**{¶39}** Evid.R. 1002 states: "To prove the content of a * * * recording * * *, the original * * * recording * * * is required, except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio."

**{¶40}** The general rule enunciated by Evid.R. 1002 is limited by Evid.R. 1003, which governs the admissibility of duplicates. Evid.R. 1003 states: "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

**{¶41}** "A party seeking to exclude a 'duplicate' * * * pursuant to Evid.R. 1003 has the burden of demonstrating that the duplicate should not be admitted." *Natl. City Bank v. Fleming*, 2 Ohio App.3d 50, 57 (8th Dist.1981). Mere speculation that the proffered duplicate is unreliable is insufficient to meet this burden. *State v. Easter*, 75

Ohio App.3d 22, 27 (4th Dist.1991). Further, a general attack on the state's failure to introduce the original does not satisfy a defendant's burden under Evid.R. 1003. *Id.*

{¶42} The prohibition against interception or use of communication does not apply to "[a] law enforcement officer who intercepts a wire, oral, or electronic communication, if * * * one of the parties to the communication has given prior consent to the interception by the officer * * *" R.C. 2933.52(B)(3).

{¶43} In this case, appellant argues that the phone conversations between himself and the victim were improperly admitted at trial. However, this issue is irrelevant to the suppression hearing, as appellant also argues under this assignment that his motion to suppress should have been granted. In any event, the court properly overruled appellant's motion to suppress since the hearing on the motion failed to reveal any constitutional violations.

{¶44} The record establishes that the state complied with Evid.R. 901 when it introduced the phone calls between the victim and appellant. There was sufficient evidence "to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). As stated, Detective Mike Rose testified that he arranged for the victim to call appellant. The calls were made from the victim's mother's cell phone. Detective Mike Rose recorded the conversations by putting the phone on speaker and using a small digital recorder to record the conversations. He heard the conversations as they were being recorded. Detective Mike Rose identified the copy of the recording that was used at trial. He indicated that it was his handwriting on the copy. Detective Mike Rose testified that he made the recording himself, that it was an accurate copy, and that it had not been altered in any manner. He also identified the two voices on the recording as

11

belonging to the victim and appellant. Thus, there was a proper foundation for introducing the recording and it was authenticated by Detective Mike Rose.

{¶45} Appellant takes issue with that fact that the recording was a copy. However, based on the facts presented, the duplicate was admissible to the same extent as the original. Evid.R. 1003. Appellant failed to meet his burden of demonstrating that the duplicate should not have been admitted. *See Fleming, supra,* at 57. Appellant cannot show any unfairness with regard to using the duplicate recording.

{¶46} Furthermore, the controlled calls made by the victim to appellant did not violate appellant's Fourth Amendment rights. The victim gave his prior consent to have the calls intercepted by Detective Mike Rose. The victim's mother did not object to the controlled calls between her son and appellant. Therefore, pursuant to R.C. 2933.52(B)(3), the phone communications were properly intercepted by Detective Mike Rose.

{¶47} Thus, the trial court did not err in failing to grant appellant's motion to suppress.

{¶48} Appellant's first assignment of error is without merit.

{¶49} In his second assignment of error, appellant contends the trial court abused its discretion in allowing the tapes to be played to the jury, over his objection, as their content was more prejudicial than probative, thus depriving him of due process and a right to a fair trial. He alleges the tapes may have misled and confused the jury because Detective Mike Rose and appellant tried to "set him up" into making an incriminating statement, even though he did not make one.

**{¶50}** "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173, paragraph two of the syllabus (1987). A trial court's decision to exclude evidence will not be overturned absent an abuse of discretion. *State v. Benson*, 11th Dist. No. 2001-P-0086, 2002-Ohio-6942, ¶7, citing *State v. Kinley*, 72 Ohio St.3d 491, 497 (1995). The term "abuse of discretion" is one of art, "connoting judgment exercised by a court, which neither comports with reason, nor the record." *State v. Underwood*, 11th Dist. No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925).

**{¶51}** The Second Appellate District also adopted a similar definition of the abuse-of-discretion standard: an abuse of discretion is the trial court's "failure to exercise sound, reasonable, and legal decision-making." *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11. When an appellate court is reviewing a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error ([o]f course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Id.* at ¶67.

**{¶52}** Evid.R. 401 states: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

**{¶53}** Evid.R. 402 provides: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the

13

State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible."

**{¶54}** Evid.R. 403(A) states: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

**{¶55}** In the instant matter, appellant was charged with unlawful sexual conduct with a minor, sexual imposition, and importuning. Pursuant to Evid.R. 401 and 402, the recorded phone communications between appellant and the victim were relevant to appellant's prosecution and, thus, properly admitted. The state used the controlled calls to show the jury appellant's reaction to being told that the police had information regarding the crimes he was alleged to have committed. The probative value of the evidence was not "substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).

**{¶56}** Thus, we fail to see that the recorded conversations were irrelevant or that appellant was prejudiced by its admission. Accordingly, the trial court did not abuse its discretion in admitting the recording.

**{¶57}** Appellant's second assignment of error is without merit.

**{¶58}** In his third assignment of error, appellant alleges the trial court abused its discretion in failing to grant a mistrial, after the prosecutor questioned the victim about appellant's past criminal history.

**{¶59}** "The granting or denying of a mistrial under Crim.R. 33 rests within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of

14

discretion." *State v. Albanese*, 11th Dist. No. 2005-P-0054, 2006-Ohio-4819, ¶22, citing *State v. Williams*, 43 Ohio St.2d 88, paragraph two of the syllabus (1975).

**{¶60}** The Ohio Supreme Court made the following observation regarding mistrials:

**{¶61}** "In evaluating whether the declaration of a mistrial was proper in a particular case, this court has declined to apply inflexible standards, due to the infinite variety of circumstances in which a mistrial may arise. This court has instead adopted an approach which grants great deference to the trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial." (Citations omitted.) *State v. Glover*, 35 Ohio St.3d 18, 19 (1988).

**{¶62}** "Mistrials should only be declared when the ends of justice so require and a fair trial is no longer possible." *State v. Johnson*, 11th Dist. No. 97-T-0227, 1999 Ohio App. LEXIS 4469, *13 (Sept. 24, 1999), citing *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991).

**{¶63}** Appellant alleges that the state violated Evid.R. 404(B) with its line of questioning. Evid.R. 404(B) states in part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

**{¶64}** In this case, appellant's motion for mistrial stemmed from the state's questioning of the victim on re-direct examination regarding why the victim's mother did not want him around appellant. The victim replied that "she said that she like started hearing stuff about him." The trial judge asked the victim to repeat his answer. The

15

victim then stated that "she started hearing stuff about stuff that [appellant] did in the past, and about like all the charges he had in the past." Defense counsel moved for a mistrial, which was overruled by the trial court.

{¶65} The state's line of questioning did not violate Evid.R. 404(B) as it did not use the victim's testimony to show that appellant committed prior bad acts or acted "in conformity therewith." Rather, the state merely asked the victim why his mother did not want him around appellant. The victim responded to the state's line of questioning by stating, "she said that she like started hearing stuff about him." The trial judge then asked the victim to repeat his answer. The victim then stated, "she started hearing stuff about stuff that [appellant] did in the past, and about like all the charges he had in the past." However, the victim never mentioned any specific bad acts or crimes committed by appellant. Thus, we fail to see how the state's questioning of the victim prevented appellant from having a fair trial. Therefore, the trial court did not abuse its discretion in overruling appellant's motion for mistrial.

{¶66} Appellant's third assignment of error is without merit.

{¶67} In his fourth assignment of error, appellant maintains the trial court erred in not granting his motion for new trial, despite the fact that the alleged victim had recanted his testimony in a notarized letter. Appellant asserts the recantation is credible and would have materially affected the outcome of the trial.

{¶68} With regard to a motion for new trial, the allowance or denial is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *State v. Hill*, 64 Ohio St.3d 313, 333 (1992).

16

{¶69} Crim.R. 33(B) states in part: "Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived."

{¶70} When a defendant moves for new trial based upon grounds of newly discovered evidence consisting of a recantation of witness trial testimony, the trial court must make two findings: "(1) which of the contradictory testimonies of the recanting witness is credible and true, and if the recantation is believable; (2) would the recanted testimony have materially affected the outcome of the trial?" *State v. Rossi*, 2d Dist. No. 24740, 2012-Ohio-2545, ¶17, quoting *Toledo v. Easterling*, 26 Ohio App.3d 59 (6th Dist.1985). *See also State v. Nahhas*, 11th Dist. No. 2001-T-0045, 2002-Ohio-3708, ¶18. Furthermore, newly discovered evidence which purportedly recants trial testimony is "looked upon with the utmost suspicion and must be viewed with strict scrutiny." *State v. Bradley*, 101 Ohio App.3d 752, 758-759 (8th Dist.1995).

{¶71} As stated, the victim testified at the bond hearing that about a week after the trial, Whitney, appellant's friend, contacted the victim and requested he write a letter stating that his trial testimony was false. The victim stated Whitney contacted him several times. The victim eventually spoke to appellant on Whitney's phone. The victim testified appellant asked him to write a letter saying that his trial testimony was false and that his mother had put him up to it. The victim claimed he did not want to write the letter but was persuaded to do so. He indicated that appellant had come to his house several times to cut brake lines and caused damage to his truck. The victim recanted his testimony because he did not know what else appellant would do.

17

{¶72} The victim ended up writing the letter and Whitney typed it. The victim stated that nothing he wrote in the letter was true. He testified appellant told him to bring copies of the letter to the court, the prosecutor, and his attorney. The victim was provided with gas money to do this.

{¶73} Thus, the evidence establishes that the victim's recantation was not credible. The victim's testimony at the bond hearing reveals appellant coerced him into recanting his trial testimony. Therefore, the trial court did not err in denying appellant's motion for new trial.

{¶74} Appellant's fourth assignment of error is without merit.

{¶75} In his fifth assignment of error, appellant argues that he was denied a fair trial by reason of prosecutorial misconduct because the prosecutor in closing argument repeatedly made reference to testimony that had been deemed inadmissible, over the objections of defense counsel, and in violation of the court's instruction.

{¶76} To make a finding of prosecutorial misconduct, a reviewing court must determine whether the challenged statements were improper, and if so, whether the remarks affected the defendant's substantial rights. *State v. Smith*, 87 Ohio St.3d 424, 442 (2000). A conviction will not be reversed because of prosecutorial misconduct unless it so taints the proceedings that a defendant is deprived of a fair trial. *Id.*

{¶77} "[T]he prosecution is entitled to a certain degree of latitude in summation * * *." *State v. Liberatore*, 69 Ohio St.2d 583, 589 (1982). A prosecutor may comment upon the evidence in his closing argument and state the appropriate conclusions to be drawn therefrom. *State v. Kish*, 11th Dist. No. 2001-L-014, 2002-Ohio-7130, ¶52. However, prosecutors "may not express their personal beliefs or opinions regarding the

guilt of the accused, and they may not allude to matters not supported by admissible evidence." *State v. Lott*, 51 Ohio St.3d 160, 166 (1990).

**{¶78}** Isolated comments of the prosecutor are not to be taken out of context and "given their most damaging meaning." *State v. Hill*, 75 Ohio St.3d 195, 204 (1996). Rather, the closing argument must be reviewed in its entirety to determine if the remarks of the prosecutor were prejudicial. *State v. Moritz*, 63 Ohio St.2d 150, 157 (1980).

**{¶79}** In the case sub judice, appellant does not take issue with any specific remarks made by the prosecutor during closing argument. Rather, appellant makes a blanket assertion that the prosecutor "repeatedly" engaged in misconduct by referencing the relationship between appellant and the victim. Appellant asserts that because the court granted his motion for acquittal on count two, sexual imposition, the jury was not to consider events prior to September 22, 2010.

**{¶80}** Viewing the prosecutor's closing statement in its entirety, we fail to see anything prejudicial. In count two of the indictment, appellant was charged with sexual imposition, a misdemeanor of the third degree, in violation of R.C. 2907.06(A)(4), which provides:

**{¶81}** "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when * * *:

**{¶82}** "* * * (4) The other person, or one of the other persons, is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the

age of such person, and the offender is at least eighteen years of age and four or more years older than such other person."

{¶83} The prosecutor provided a brief background and discussed how the victim and appellant had become friends, prior to the September 22, 2010 incident. The prosecutor referenced that appellant and the victim visited at appellant's home, rode four wheelers together, and worked at a landscaping business. The prosecutor did not discuss any conduct that occurred before the September incident that was the basis of the charge contained in count two of the indictment. Thus, we fail to see any prosecutorial misconduct.

{¶84} Appellant's fifth assignment of error is without merit.

{¶85} In his sixth assignment of error, appellant contends that he was denied due process of law and the right to a fair trial based on the cumulative errors of the trial court and prosecutor.

{¶86} The cumulative error doctrine, first adopted in Ohio by *State v. DeMarco*, 31 Ohio St.3d 191 (1987), provides: "Although violations of the Rules of Evidence during trial, singularly, may not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial." *Id*. at paragraph two of the syllabus. "'However, in order even to consider whether "cumulative" error is present, we would first have to find that multiple errors were committed * * *.'" *State v. Moore*, 11th Dist. No. 2009-A-0024, 2010-Ohio-2407, ¶65, quoting *State v. Goff*, 82 Ohio St.3d 123, 140 (1998).

{¶87} In our case, because multiple errors were not committed in this matter, the cumulative error doctrine does not apply.

20

**{¶88}** Appellant's sixth assignment of error is without merit.

**{¶89}** In his seventh assignment of error, appellant alleges that the trial court erred in denying his Crim.R. 29 motion for acquittal. He maintains the state did not prove the elements of importuning and stresses that the trial testimony was "conflicting."

**{¶90}** With regard to a motion for judgment of acquittal, in *State v. Bridgeman*, 55 Ohio St.2d 261 (1978), the Ohio Supreme Court established the test for determining whether a Crim.R. 29 motion for acquittal is properly denied. The Court stated that "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *Id.* at syllabus. "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick*, 11th Dist. Nos. 2003-T-0166 and 2003-T-0167, 2004-Ohio-6688, ¶18.

**{¶91}** As this court stated in *State v. Schlee*, 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, *13-14 (Dec. 23, 1994):

**{¶92}** "'Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while 'manifest weight' contests the believability of the evidence presented.

**{¶93}** "'"The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. *The claim of insufficient evidence invokes an*

21

*inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence.*'"

**{¶94}** "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence 'in a light most favorable to the prosecution,' '(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.'" (Emphasis sic.) (Citations omitted.)

**{¶95}** "[A] reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." *State v. March*, 11th Dist. No. 98-L-065, 1999 Ohio App. LEXIS 3333, *8 (July 16, 1999). The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. *State v. Jenks*, 61 Ohio St.3d 259, paragraph two of the syllabus (1991). Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

**{¶96}** Appellant was charged with importuning, a felony of the fifth degree, in violation of R.C. 2907.07(B)(1), which states: "No person shall solicit another, not the spouse of the offender, to engage in sexual conduct with the offender, when the offender is eighteen years of age or older and four or more years older than the other person, and the other person is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of the other person."

22

**{¶97}** The state presented evidence at trial that the victim met appellant when he was 15 years old. The victim became friends with appellant, who was 43 years old. As stated, appellant and the victim met a few times a week and communicated by phone several times a day. They rode four wheelers, worked in appellant's garage, and ate meals together. Appellant later obtained a landscaping job for the victim. They worked together almost every day. The victim rode to and from work with appellant and would occasionally sleep at his home.

**{¶98}** On September 22, 2010, while working on a remote control car in appellant's garage, the car's battery exploded on them. After the explosion, the victim went inside appellant's house to take a shower. After showering, the victim, wearing only a towel, went into appellant's bedroom to get dressed. The victim testified that appellant began touching his leg and tried to undo his towel. Appellant touched the victim's "private area" and told him to get on the bed. The victim said that although he did not comply with appellant's request, appellant forced him onto the bed. Appellant shut off the light and locked the door. Appellant climbed onto the bed and began touching the victim. According to the victim, appellant made him get on his hands and knees. Appellant then penetrated the victim's anus with appellant's penis.

**{¶99}** While having sex with the victim, appellant heard a noise in the kitchen, and left the bedroom to check. Appellant came back into the bedroom to tell the victim that the victim's mother was there. The victim was afraid to tell his mother what had happened. The victim was also afraid to tell police, who later arrived at appellant's home, what had taken place.

{¶100} The victim's mother testified that she went to appellant's home to pick up her son. When she arrived, appellant's mother invited her in and told her that her son was in the bedroom. The victim's mother attempted to open the bedroom door, but appellant came out of the bedroom, wearing only a pair of jeans. The victim's mother asked what was going on. Appellant did not answer her. Appellant stood in the doorway with his hand on the door knob. The door remained closed. Appellant eventually allowed the victim's mother past him and she opened the door. The victim's mother saw her 15-year-old naked son on appellant's bed. The victim's mother called the police.

{¶101} Deputy Brian Rose arrived at appellant's residence. He conversed with the victim's parents in the driveway. He also spoke with appellant, appellant's mother, and the victim inside the residence. Deputy Brian Rose testified that the victim seemed very upset, and would not calm down or follow instructions. The victim did not tell anyone that day that appellant had anal sex with him. The victim was taken to YDC.

{¶102} Heath, the victim's therapist at YDC, testified that the victim disclosed information to him on two occasions regarding allegations of sexual abuse by appellant. As a result of this information, Heath contacted Detective Mike Rose.

{¶103} Based on the information he received from Heath, Detective Mike Rose testified that he further investigated the matter. Detective Mike Rose interviewed the victim, who was in custody on another matter. The victim agreed to make controlled calls to appellant in order to get appellant to admit to the sexual abuse. Again, the victim voluntarily consented to having the calls recorded and signed a consent form. Three calls took place between appellant and the victim, which were played for the jury.

24

Appellant exhibited "unusual" behavior in that he sounded nervous and evasive, and attempted to manipulate the victim into telling a story consistent with his own. However, he made no admission during any of the calls.

{¶104} Pursuant to *Schlee*, *supra*, there is sufficient evidence upon which the jury could reasonably conclude beyond a reasonable doubt that the elements of importuning were proven. Thus, the trial court did not err in overruling appellant's Crim.R. 29 motion.

{¶105} Appellant's seventh assignment of error is without merit.

{¶106} In his eighth assignment of error, appellant argues that his conviction for importuning is against the manifest weight of the evidence.

{¶107} As this court stated in *Schlee*, *supra*, at *14-15:

{¶108} "'[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.

{¶109} "'In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, *weighs the evidence* and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)'" (Citations omitted.) * * *" (Emphasis sic.)

{¶110} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "'only in the exceptional case in which the evidence

weighs heavily against the conviction.'"  *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶111} With regard to the manifest weight of the evidence, we note that the jury is in the best position to assess the credibility of witnesses.  *State v. DeHass*, 10 Ohio St.2d 230, paragraph one of the syllabus (1967).

{¶112} Here, the jury chose to believe the state's witnesses.  Based on the evidence presented, as previously stated, we cannot say that the jury clearly lost its way in finding appellant guilty of importuning.  *Schlee*, *supra*, at *14-15; *Thompkins, supra,* at 387.

{¶113} Appellant's eighth assignment of error is without merit.

{¶114} For the foregoing reasons, appellant's assignments of error are not well-taken.  The judgment of the Ashtabula County Court of Common Pleas is affirmed.  The court finds there were reasonable grounds for this appeal.

TIMOTHY P. CANNON, P.J.,

DIANE V. GRENDELL, J.,

concur.